## In the Franklin County Court of Common Pleas

Houston Byrd, Jr.                                              )
241 N. 10th St.
Newark, Ohio 43055
740-345-7887                                         Judge _____

email simselizah@outlook.com              Case No. _____

Plaintiff

                                                          Non-Oral Hearing
vs.                                             Violation of Federal and State Consumer Laws

JP Morgan Chase (Chase), Executive Office, OH4-7120
"c/o" Mark Donavon, et al
3415 Vision Drive
Columbus, Ohio 43219

Defendant(s)                                              )

---

## Complaint

---

### Jurisdiction

The U.S. Constitution, Amendment 14, [1.] All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**"Ohio Constitution Article I - Bill of Rights, §16: Redress for injury; due process.  I.16 Redress in courts (1851, amended 1912) All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. [Suits against the state.] Suits may be brought against the state, in such courts and in such manner, as may be provided by law."**

**Continuing Offenses f**or conspiracy, the period begins to run when the last overt act is committed. Fiswick v. US, *329* U.S. 211 (1946);

### I.   Introduction

Ohio Revised Code 2921.11 Perjury (A) No person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a

false statement previously made, when either statement is material. (F) Whoever violates this section is guilty of perjury, a felony of the third degree.

The plaintiff submits this complaint due to the defendant's 'continuing and systemic conspiracy offenses' and theft of monies. The plaintiff alleges, the defendants have **violated numerous Federal and State laws**, including but not inclusive, 18 U.S.C.A. s 1341, United States Code Title 18. Crimes and Criminal Procedure Part I-Crimes, Chapter 63-Mail Fraud, Section 1341. Frauds and swindles; 18 U.S. Code § 1349; 18 U.S. Code § 656; Fair Credit Reporting Act's (FCRA) 12 C.F.R § 227.15; FCRA section § 611. Procedure in case of disputed accuracy [15 U.S.C. § 1681i] and section § 1681s-2(b); FCRA 15 U.S.C. § 1681 also section § 623. Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2] and Ohio Revised Codes (ORC) 1345 and 2913.02(A)(3) by Continuing Conspiracy and Deception. The complaint is supported by Exhibits 1 – 18 and a – c with respect to a promissory note.

Chase's continuing and systemic criminal - **conspiracies** were still affecting one's Fair Isaac Corporation (FICO) score as late as early 2017, refer to Exhibit 18D. Upon a request as to why, refer to Exhibits a, b, c and 13 from Chase, they still were unwilling to address our concerns regarding the pyramided late fees, the criminal 5/1 dates, the illegal repossession and the unlawful reporting to the Credit Reporting Agencies after they had received a full payment **four months prior. (Emphasis)** The patent violations of ORC 2923.01, 2923.03 and 2923.32 and federal laws to be addressed have gravely affected the plaintiff's life.

**From:** Fraud Prevention and Investigation
**Sent:** Tuesday, December 24, 2019 9:21 AM
**To:** Houston Byrd
**Subject:** RE: We were told to send the full complaint

Thank you for the information. We will review the information you provided in both emails.

Global Security | JPMorgan Chase & Co. | 8181 Communications Pkwy, Plano, TX, 75024| T: 888-282-5867| fraud.prevention.and.investigation@jpmchase.com

Ohio Theft Rule

I.   Chapter 2913: THEFT AND FRAUD (A) "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

II.  ORC 2913.02 Theft (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; (B)(1) Whoever violates this section is guilty of theft.  If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree.  If the value of the property or services stolen is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, a violation of this section is grand theft, a felony of the fourth degree. [1]

"Continuing and systemic offenses such as misrepresentation or concealment of a

material fact or matter or the scheme to obtain money or property by means of false or fraudulent

pretenses involving a false statement, assertion, half-truth or knowing concealment concerning a

material fact or matter" shall be fined under the following title or imprisoned not more than 20

years, or both and a 10-year term. [2]

18 U.S.C.A. s 1341, United States Code Title 18. Crimes and Criminal Procedure Part I-Crimes, Chapter 63-Mail Fraud, Section 1341. Frauds and swindles ..., "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such

---

[1]  Conspiracy or attempt to commit any of these offenses: term limit 20 yrs. Ohio Criminal Statute of Limitations Laws - FindLaw.  Prison term of 6 to 18 months; a fine of as much as $5,000; or both.

[2]  **Continuing Offenses f**or conspiracy, the period begins to run when the last overt act is committed. *Fiswick v. US,* 329 U.S. 211 (1946)

scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S. Code § 1346. Definition of "scheme or artifice to defraud"

For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

18 U.S. Code § 1349. Attempt and conspiracy

Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

"There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." Schmuck v. United States, 489 U.S. 705, 721 n. 10 (1989); see also Pereira v. United States, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . §1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, Mail and Wire Fraud, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

Punishment for a conviction under the mail fraud statute is a fine or imprisonment for not more than five years, or both. If, however, the violation affects a financial institution, the punishment is more severe: the statute provides that "the person shall be fined no more than $1,000,000 or imprisoned not more than 30 years, or both."

18 U.S. Code § 656 - Theft, embezzlement, or misapplication by bank officer or employee

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, depository institution holding company, national bank, insured bank, branch or agency of a foreign bank, or organization operating under section 25 or

Franklin County Ohio Clerk of Courts of the Common Pleas- 2021 Apr 05 7:58 PM-21CV002085

section 25(a) [1] of the Federal Reserve Act, or a receiver of a national bank, insured bank, branch, agency, or organization or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank, branch, agency, or organization or holding company or any moneys, funds, assets or securities entrusted to the custody or care of such bank, branch, agency, or organization, or holding company or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

The limitations for banks and other financial institutions are ten years for the following offenses:

1. Bank fraud (scheme or artifice to defraud a financial institution). 18 USC 1344.

2. Mail fraud (using the mails for a scheme or artifice to defraud). 18 USC 1341.

3. Wire fraud (using wire, radio, or television in a scheme or artifice to defraud). 18 USC 1343.

4. Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 USC 1962, that is predicated on bank fraud under 18 USC 1344.

5. Receipt of commissions or gifts for procuring loans. 18 USC 215.

6. Theft, embezzlement, or misapplication by bank officer or employee. 18 USC 656.

7. Embezzling funds from a federal financial institution. 18 USC 657.

8. Falsifying bank records (reports, entries or transactions). 18 USC 1005.

9. Falsifying records of a federal financial institution (reports, entries or transactions) 18 USC 1006.

10. Falsifying, forging, or counterfeiting a statement to the Federal Deposit Insurance Corporation (FDIC). 18 USC 1007.

11. Making a false statement or report, or overvaluing assets for a federal loan 18 USC 1014.

12. Making a false statement or report, or overvaluing assets as it relates to insurance and a

financial institution. 18 USC 1033.

If an individual withdraws from a conspiracy, the statute of limitations will start running at the time of the withdrawal. A withdrawal is generally interpreted as an affirmative act to withdraw such as reporting the conspiracy to the authorities or telling co-conspirators of the withdrawal. *See* United States v. Gonzalez, 797 F.2d 915 (10th Cir. 1986).

The Ohio Attorney General's (OAG) Consumer Protection Section protects Ohioans from predatory and illegal business practices. With authority granted by the Ohio Consumer Sales Practices Act and other statutes, the section enforces laws that prohibit unfair and deceptive practices including but not limited to: false advertising, shoddy workmanship, and failure to perform services or to deliver goods. Exhibit 1, November 10, 2020, states, the OAG forwarded plaintiff's concerns to both the Consumer Financial Protection Bureau (CFPB) and the Office of the Comptroller of Currency (OCC). **As late as this filing, neither the CFPB nor OCC have responded to the OAG's November 10, 2020, letter.**

1. ORC 1345.02 Unfair or Deceptive Acts or Practices (C) In construing division (A) of this section, the court shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45 (a)(1) of the "Federal Trade Commission Act," 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended.

   a. ORC 1345.031(B)(7) Late Fees

   b. ORC 1345.09(C)(2) Truth Lending Act and others

The Consumer Protection Section's Economic Crimes division assists local law enforcement and prosecutors in identifying, investigating, and prosecuting consumer fraud of a criminal nature. The division consists of four attorneys and three investigators who are

dedicated solely to criminal investigations. Additionally, the division is able to draw resources from other personnel within the Consumer Protection Section when needed.

The Uniform Commercial Code (UCC) is important, UCC helps companies in different states to transact with each other by providing a standard legal and contractual framework. The UCC laws have been fully adopted by most states in the U.S. Although, there are some slight variations from state-to-state, the UCC code consists of nine separate articles, which govern various types of transactions, including banking and loans.

## II.   Background

The plaintiff received compelling documents regarding Chase's 'continuing offenses of conspiracy' to the Truth in Lending disclosure, violation of Fair Credit Reporting Act, theft, excessive-pyramided late fees and enigmatic 05/01/2007, dates, see Exhibits 2A, 2B and 2C with respect to a bilateral contract and CT Corporation's failure to execute an agreement, Exhibit 13.

## III.   Motion to Dismiss and Preponderance Rules

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556); Gonzales v. Kay, 577 F.3d 600, 603 (5th Cir. 2009); Fields v. Dep't of Pub. Safety, 911 F. Supp. 2d 373, 383 (M.D. La. 2012) (Jackson, J.)

1. Ohio follows the "no set of facts" pleading standard, recognizing that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." O'Brien v. Univ. Community Tenants Union, Inc., 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975), quoting Ashcroft v. Iqbal, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).

2. The Ohio Supreme Court has observed that "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." York v. Ohio State Highway Patrol, 60 Ohio St. 3d 143, 145, 573 N.E. 2d 1063

3. Bell Atlantic Corp. v. Twombly (2007) and Ashcroft v. Iqbal (2009)—the Supreme Court, utilizes the plausibility test…a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

OJI-CR 417.29 Preponderance of the evidence R.C. 2901.05(A) Affirmative Defense; Burden. OJI-CR 417.27. Preponderance of the evidence is the greater weight of the evidence; that is, evidence that you believe because it outweighs or overbalances in your minds the evidence opposed to it. **P**reponderance of the evidence - the greater weight of the evidence required in a civil (non-criminal) lawsuit for the trier of fact (jury or judge without a jury) to decide in favor of one side or the other.

**IV.    Complaint,** see Exhibits 1 – 18 and a – c (endnotes).

The source of this complaint stems from Chase's continuing and systemic violation of State and Federal laws regarding a bilateral loan: 1.) Truth in Lending disclosure, amortization issues; therefore, contrived balances and interest payments; 2.) pyramided and embellished late fees; 3.) insertion of twelve (12) fictious 05/01/2007, dates and the insolence to levy late fees for each of the 05/01 dates. Refer to Chase's Exhibits 3 and 4 regarding late fees. See the cryptic 05/01 dates, Exhibit 2A; 4.) Violation of Fair Credit Reporting Act, 15 U.S.C. § 1681; 5.) issues with the Annual Percentage Rate and 6.) an alleged appeal or arbitration by OCC. Any response to this Complaint must be validated for credibility with deposed documents and may not rest upon mere denials, due to the felonious and problematic documents. Several problematic documents as late as February and May 2020, see Exhibits 13 and 17. Troubling, more than ten Chase's employees conspired to perpetrate the theft and 'continuing offenses':

Ms. Jensen and others including, not inclusive, were Ms. Maria Totanes, Susan Bocassi, Annemaria DeTommaso, Garen C. Britt, Christopher Tabor, Lisa Tursellino. [3] None, were forthcoming with evidence and a credible response to support the Annual Percentage Rates, pyramiding and the 5/1 dates, a few of Chase's fabricated responses are presented in the endnotes. [i]

The tort of civil conspiracy is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual

---

[3] Thanks for the Exhibits 2A, 2B, 2C and other exhibits enclosed. Mr. Britt said to file a claim. The exhibits are compelling, continuous conspiracy and felonious.

damages.'"  Kenty v. Transamerica Premium Ins.  Co. (1995), 72 Ohio St.3d 415, 419, 650

N.E.2d 863, 866, quoting LeFort v. Century 21-Maitland Realty Co. (1987), 32 Ohio St.3d 121,

126, 512 N.E.2d 640, 645; Gosden v. Louis (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481,

496; Minarik v. Nagy (1963), 8 Ohio App.2d 194, 196, 93 Ohio Law Abs. 166, 168, 26 O.O.2d

359, 360, 193 N.E.2d 280, 281.

Depending upon whom one speaks to at Chase, the plaintiff received contradictory responses.

1) Amortization, accounting and bookkeeping issues – in lieu of the principal
   increasing and interest decreasing, Chases numbers are erratic, see Exhibits 2A, 2B
   and four - page (4) page Exhibit 5, which shows a correct amortization.  Even,
   when, the plaintiff submitted payments 15-days early and double payments; the
   plaintiff's account was charged late fees.

Promissory Note's Truth in Lending Disclosures

Lenders must provide a Truth in Lending disclosure statement that includes information about
the amount of your loan, the APR, finance charges (including application fees, late charges,
prepayment penalties), a payment schedule and the total repayment amount over the lifetime of
the loan.

1) Chase violated Sec. 611. Criminal liability willfully and knowingly.  Whoever willfully
   and knowingly (1) gives false or inaccurate information or fails to provide
   information which he is required to disclose under the provisions of this subchapter or,
   (2) any regulation issued thereunder, or (3) otherwise fails to comply with any
   requirement imposed under this subchapter, shall be fined not more than $5,000 or
   imprisoned not more than one year, or both.

2) https://www.nolo.com/legal-encyclopedia/most-common-violations-the-fcra.html

The Fair Credit Billing Act.  Dating back to 1975, the Fair Credit Billing Act protects

consumers from unfair billing practices.  Billing issues include math errors, charges for the

wrong date or amount and unauthorized charges.  The act also covers statements mailed to a

wrong address or failure to credit payments to an account.  Refer to Exhibits 2A, 2B and 2C,

for the same timeframes, there are different dates, different interests and principal

applications.  For reference, what bank, alleges late payments for five (5) years? **(Emphasis)**

**IMPORTANT FACT:** On 2/27/2006, Chase credits the account with a service agreement for $3,095.00, which then leaves a balance of either $25,551.45. See, Exhibit 2A and a true example of a proper amortization chart Exhibit 5.

The plaintiff paid $24,641.00 toward the loan see Exhibits 2A and 2B aggregate payments before Exhibits 8 - 12. Taking into consideration, the flawed amortization, cryptic 05/01 dates with associating late fees of $270.00, the pyramided late fees totaling $1,500.00 and **Exhibit 12 for** $6,966.02, the account has a substantial reparation surplus.

a) Fraudulent and Improper Amortization. Another issue with the 2/27/2006 amortization date, Exhibit 2A is the date clearly states $25, 551.45 even though there are questionable interest amounts in the interest column. The interest column should have decrease after each payment. Incredulously, Exhibits 2A, 2B and 2C references over 50 months of alleged late fees to be discussed later. **(Emphasis)**

b) **Pursuant to https://www.onlineloancalculator.org/, plaintiff was paying over 7.3%.**

c) The June 13, 2006, letter states, "Although the rate shows 7.2% on your contract, the actual rate we are charging is 6.99%", see Exhibit 7. Exhibit 6 supports Exhibit 7. So all should question, whether the initial amortization was correct, when some communications from Chase allege a 7.2% APR but bullet b) indicates we were paying 7.3%.

**NOTE:** The promissory note specifically states, "If a payment is more than 10 days late, you will be charged 5% of the full amount of the installment due, **or $25.00, whichever is less."** See, Exhibit 3; however, Exhibits 2A, 2B and 2C supports an alternative argument.

2) Alleged late fees, refer to Exhibit 3, which clearly states, even if the late fees were legitimate, the defendants were permitted to charge $25.00, see Ohio Revised Code 1345.031(B)(7) and 12 CFR § 227.15 Unfair late charges.

Chase has feloniously, knowingly and willfully committed fraud by violating the Promissory Note and Security Agreement, Late Fee section. **The plaintiff paid over $1,500.00**

in alleged pyramided late fees and some late fees exceeded $100.00. Is it customary for a company to permit such delinquencies, if legal and substantiated, see Exhibits 2A, 2B and 4?

Bank pyramiding late fees 12 CFR § 227.15 Unfair late charges. a). In connection with collecting a debt arising out of an extension of credit to a consumer, it is an unfair act or practice for a bank to levy or collect any delinquency charge on a payment, when the only delinquency is attributable to late fees or delinquency charges assessed on earlier installments, and the payment is otherwise a full payment for the applicable period and is paid on its due date or within an applicable grace period. This practice is called "pyramiding" late fees.

Regulation Z's Payment Crediting Rules for Open-End Credit, Credit Cards, and Closed-End Mortgage Payments. Pyramiding Late Fees. Pyramiding late fees refers to a creditor's practice of imposing a late fee when a consumer sends a timely payment in an amount sufficient to cover the regularly scheduled payment but insufficient to cover a prior unpaid late or delinquency fee. If the creditor allocates payments first to late fees, the consumer's payment only partially covers the currently scheduled payment, resulting in a new late fee. If the consumer continues to pay only the scheduled payment, late fees will continually be assessed (hence, the phrase pyramiding of late fees). Section 226.36(c)(1)(ii) requires that if a consumer sends a timely payment sufficient to cover the currently scheduled payment, <u>the creditor cannot assess late fees, even if the late fees were valid.</u>

Financial institutions are familiar with this rule because pyramiding late fees is already prohibited by the credit practices rule issued by the Federal Trade Commission (FTC), the federal banking agencies under the FTC Act. (12 C.F.R § 227.15) and ORCs.

3) Chase fraudulently inserted twelve (12) cryptic and fictious 05/01/2007, dates and then improperly levied late fees for the twelve (12) 05/01/2007 dates totaling approximately $270.00.

Chase's insertion of the cryptic 05/01/2007 dates, see Exhibit 4's response. Exhibit 2A **HAS** 05/1 dates and Exhibit 2C, with the similar but not exact dates for the same timeframe, fraudulently **DOES NOT** have any 05/01 dates. In addition, Chase illegally charged late fees for the cryptic 05/01 dates, the amortizations were distinctly different and 2C had written notes. Chase has failed to competently address the felonious 5/1 date insertions from 2/27/06 until 4/16/07 with $22.33 alleged associated late fees throughout the timeframe! (**Emphasis**) Exhibit 2A and 2C

4) Chase's violation of Fair Credit Reporting Act, 15 U.S.C. § 1681

Furnishing and Reporting Inaccurate Information
Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA")

Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") clearly states no one can allege a charge-off, when the loan is paid in full, see Exhibits 10 and 11; then, the defendants repossess the vehicle and mandates, we submit a dubious charge. The plaintiff argues, was the full amount or any portion of Exhibit 12 used for the loan payment?

Your creditor **must not** supply information to a CRA that it knows (or should know) is **inaccurate**. That includes: **(Emphasis)**

a. Reporting a debt as charged off when you settled it or paid it in full.

b. Misstating the balance due.

c. Reporting late payments when you paid timely.

FCRA is U.S. Federal Government legislation enacted to promote the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies. Unfair Acts or Practices, assessing whether an act or practice is unfair, an act or practice is unfair where it (1) causes or is likely to cause *substantial injury to consumers*, (2) cannot be reasonably avoided by consumers.

Upon reviewing Exhibits 2A and 2B, the plaintiff argues if it wasn't for the unreliable amortization accounting, insertion of the cryptic 05/01/2007 dates and pyramiding late fees; the bilateral contract was paid in full on 09/21/2010. Then, Chase knowingly and willfully committed aggravated assault a 4th degree felony in Ohio pursuant to Ohio Revised Code 2913.02. Chase enticed and prompted the local police department to be an accessory in the commission of a felony crime by an illegal repossession. The legal and valid title was timestamped on May 9, 2011, Exhibit 8 and paid in full on 04/29/2011. **Exhibit 2B records a $0.00 balance on 04/29/11**.

**NOTICE:** Exhibit 10, Section C information from TransUnion, where the document clearly states the Account was Paid in Full was a Charge Off. **The Date Closed on account was**

**05/01/2011, the May 9, 2011, Timestamped Title** and Date Paid 04/01/2011 **provided** to TransUnion by Chase.  So, the agency had a month to devise an illegal scheme!

Upon accepting Exhibit 12 on 04/29/2011 (see Exhibit 2B's total amount paid), one would determine the contract was fulfilled!  So, why the illegal repossession and violation of FCRA? See Exhibits 9 - 10.

i. There were six (6) late fees from 09/21/2010 until 04/18/2011.  Plaintiff submitted a $6,966.02 money order, Exhibit 12.  Chase deposited the money order on 04/29/2011.  Exhibit 2B clearly documents, Chase only deposited $5,957.42 *[ So, was the automobile paid off on 04/29/2011 or did Chase extort the full amount of the $6,966.02 ORC 2913.02(A)(3)?]*, toward the automobile loan.  Fraudulently Chase accesses another late fee of $412. 10 on 04/29/2011 after depositing Exhibit 12 (refer to six late payments prior to Exhibit 12, so why the $412.10 fee)?  Then, Chase levies another miscellaneous fee of $191.67 on the same 04/29/2011, date.

ii. Plaintiff received the automobile title from Ms. Elizabeth Simara from Ft. Worth, Tx 7610, timestamped May 9, 2011, (**Emphasis**)

iii. Inexplicably, on May 10, 2011, Chase performed an illegal repossession.   Subsequently, plaintiff paid a $6,966.02 reclaim cost!  Either, Chase is illegally extorting monies or with continuing malice and conspiracy 'repossessed' an automobile; they knew or should have known had a legal and valid title date stamped May 9, 2011. [4]

iv. **The harassment bizarrely continues on August 2011, three (3) months after there was a no balance on the account,** plaintiff received a letter from Chase alleging, "Chase has updated its records to reflect the status of your account as a paid in full charged off.

---

[4] Exhibits 9 and 10, whoever initiated the theft must be held accountable by the OAG!

We have notified the credit agencies…". Exhibit 10.  In violation of Fair Credit Reporting Act, 15 U.S.C. § 1681.

v.  The terms paid in full charged off contradict each other.  When, we requested an explanation from Ms. Maria A. Totanes on August 12, 2011, <u>she failed to respond</u>! Exhibit 11.

vi.  Then, plaintiff expended $10,000.00 to purchase a work car.  Total unnecessary expenditures of $16,966.02, including Exhibit 12, due to an illegal repossession and violation of numerous Federal and State laws previously addressed.

The element of intent in a scheme to defraud requires "a willful act by the defendant with the specific intent to deceive or cheat, usually for the purpose of getting financial gain for one's self **or causing financial loss to another**." Sheneman, 682 F.3d at 629 (quoting United States v. Howard, 619 F.3d 723, 727 (7th Cir. 2010)). "[S]pecific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself." Id. at 727.

When a scheme to defraud is shared in by two or more, it becomes a conspiracy; the rules of evidence are the same as where a conspiracy is charged (Robinson v. United States, 9 Cir., 33 F.2d 238); and the act of each party in furthering the common scheme is the act of all.  Davis v. United States, 5 Cir., 12 F.2d 253. If one's intent is to defraud when he joins a dishonest scheme, he becomes a part of the scheme, although he may know nothing but his own share in the aggregate wrongdoing.  Silworth v. United States, 2 Cir., 10 F.2d 711.  Formal agreement is not necessary, it being sufficient if there is an association in the purpose to defraud.

Letters mailed after the defrauders have received their money may be in furtherance of the fraudulent scheme, United States v. Sampson, 371 U.S. 75, 80-81, 9 L. Ed. 2d 136, 83 S. Ct. 173 (1962); United States v. Galloway, 664 F.2d 161, 163 n. 3 (7th Cir. 1981), cert. denied, 456 U.S.

1006, 73 L. Ed. 2d 1300, 102 S. Ct. 2296 (1982); United States v. Kent, 608 F.2d 542, 546 (5th Cir. 1979), cert. denied, 446 U.S. 936, 100 S. Ct. 2153, 64 L. Ed. 2d 788 (1980), and letters mailed by victims to the defrauder can be mailings in execution of a fraud. United States v. Toney, 598 F.2d 1349, 1353 (5th Cir. 1979), cert. denied, 444 U.S. 1033, 62 L. Ed. 2d 670, 100 S. Ct. 706 (1980).

The indictment sufficiently charges these essentials: That a scheme to defraud was intentionally devised by defendants; that, to effect or to attempt to affect the object of the scheme, defendant placed or caused to be placed mail matter in a post office of the United States. United States v. Young, 232 U.S. 155, 34 Sup. Ct. 303, 58 L. Ed. 548; Linn v. United States, 234 Fed. 543, 148 C.C.A. 309.

It is not necessary, in an indictment under section 215 supra, that the scheme itself appear to be fraudulent on its face ( McConkey v. United States, 171 Fed. 829, 96 C. C. A. 501; or that it be alleged that any one has actually lost money or been defrauded. Weeber v. United States (C. C.) 62 Fed. 740; United States v. Hess, 124 U.S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516. The charge of conspiracy is also sufficient.

5) Annual Percentage Rate

Pursuant to https://www.onlineloancalculator.org/, plaintiff was paying over 7.3%.

A. Exhibit 6, dated November 16, 2010, para. 2, alleges, "The present APR on your account is 6.99%."

B. Defendants allege 6.99% but any loan calculator disputes the assertions. The June 15, 2006, para. 4, letter states, "Although the rate shows 7.2% on your contract, the actual rate we are charging is 6.99%. Exhibit 7. Same as Chase's August 2, 20007, letter.

C. Exhibit 13, dated February 4, 2020, alleges an interest rate of 6.9% and an Annual Percentage Rate (APR) of 7.2%.

6) Alleged Arbitration by OCC

Even if Chase can support the statement, Exhibit 14, the alleged Agreement to Arbitrate

Dispute violated the Substantive Unconscionability requirement for determining if an arbitration

is enforceable. Plaintiff acknowledges, Exhibit 14 was included in the loan package but can

anyone read it during the signing? In addition, the dealership failed to explain the document.

317.114 Standard format of instruments to be recorded. (A) Except as otherwise provided in
divisions (B) and (C) of this section, an instrument or document presented for recording to the
county recorder shall have been prepared in accordance with all of the following requirements:
**(1) Legible print size not smaller than a font size of ten;**

An alleged OCC appeal, arbitration or other, see Exhibits 13 and b, statement must be

verified, since Ohio's Arbitration Act Rule 2711.08 states any award must be in writing and

2711.09 mandates an Application. So, plaintiff could have responded accordingly with respect

to ORCs 2711.02, 2711.10, 2711.11 or 2711.15. Regardless, the alleged appeal/arbitration

argument is thereby, immaterial, irrelevant and Moot in several instances:

**NOTE:** Is there a **deposed timestamped** copy of the following? The plaintiff clearly states, he
didn't receive a certified - copy pursuant to either a Federal or State law.

ORC **-** 2711**.**08 Award must be in writing. The award made in an arbitration proceeding must be
in writing and must be signed by a majority of the arbitrators. A true copy of such award without
delay shall be delivered to each of the parties in interest.

    i.    Any documents pursuant to ORC 2711.08

Arbitration Rules and Mediation Procedures, section R-17. Disqualification of Arbitrator**.** (2) any
known existing or past financial, business, professional or personal relationships which might
reasonably affect impartiality or lack of independence in the eyes of any of the parties. For
example, prospective arbitrators should disclose any such relationships which they personally
have with any party or its lawyer, with any co-arbitrator, or with any individual whom they have
been told will be a witness.

    ii.    A copy of whom the alleged arbitrator was, expertise and whether the arbitrator had
            prior professional or social relationships with any party. **(Emphasis)**

United States Arbitration Act, 9 U.S.C. ". . . where there was evident partiality or corruption in the
arbitrators, or either of them."); *see generally Commonwealth Coatings Corp. v. Cont'l Cas. Co.*,
393 U.S. 145, 150 (1968) (arbitrators had a regular and significant, albeit "sporadic," business
relationship with one of the parties and noting that the "rule of arbitration and this canon of judicial

ethics rest on the premise that any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and controversies to arbitration boards that might reasonably be thought biased against one litigant and favorable to another."); *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994).

Substantive Unconscionability. This doctrine states, the terms identified in the contract are unconscionable. Courts will usually look at several factors in order to determine if a term or provision is, in fact, unconscionable. Such factors include:

1. If one party has significant bargaining power over the other party

2. If one of the parties included hidden language in the contract, whether it be language included in a different provision, verbiage that was included in much smaller font than the remainder of the contract, or language that is overly complex and hard to understand. **(Emphasis)**

3. If any illegal conduct is identified in the contract, issue with interest rates.

4. If duress or coercion exist

V. **Consumer Financial Protection Bureau (CFPB), CT Corporation System, Fraud Prevention and Investigation; executive.office@chase.com and Office of the Comptroller of the Currency (OCC). No response from CFPB, CT Corporation, Fraud Prevention nor OCC <u>incorporating the enclosed 21 Exhibits.</u>**

If what, Chase alleges are factual and if an appeal/arbitration was not 1.) procured by corruption, fraud, or undue means; 2.) there was no partiality or corruption on the part of any arbitrator and 3.) the CFPB and OCC are credible, this matter should be adjudicated expeditiously. Chase shouldn't be reticent with their response to the issues raised in this complaint, see Chase's Exhibit 13, para. 2., where Chase alleges, the OCC or other allegedly arbitrated the matter.

<u>No Responses from Chase, CFPB nor the OCC with supportable evidence.</u> **(Emphasis)**

1.} As, a "A central part of the CFPB's mission is to stand up for consumers and make sure they are treated fairly in the financial marketplace. One way we do this is by enforcing federal consumer financial laws and holding financial service providers accountable for their actions. Enforcement proceedings are resolved by an enforcement action in federal court or through an administrative adjudication proceeding."

On March 17, 2020, we submitted 20 exhibits and copious information in our **January 21, 2020, to Director Kathy Kraninger regarding COMPLAINT ID, 200106-4654991.**

Tracking Number: 70190700000231955391, Your item was delivered to an individual at the address at 12:05 pm on March 23, 2020 in WASHINGTON, DC 20552. Status Delivered March 23, 2020 at 12:05 pm, Delivered, Left with Individual WASHINGTON, DC 20552

2.). The Office of the Comptroller of the Currency charters, regulates, and supervises all national banks. It also supervises the federal branches and agencies of foreign banks.

   The plaintiff attempted to resolve the claim, which is evidenced by copious corroborative evidence such as electronic mails, USPS letters to and from Chase and others.

   a. **From:** Houston Byrd
      **Sent:** Wednesday, February 26, 2020 2:25 AM
      **To:** CFPBOmbudsman@cfpb.gov
      **Subject:** COMPLAINT ID, 200106-4654991

   b. **From:** Houston Byrd
      **Sent:** Saturday, October 10, 2020 3:30 PM
      **To:** monica.freas@occ.treas.gov; joseph.otting@occ.treas.gov; jonathan.gould@occ.treas.gov **Cc:** CFPB_Ombudsman
      **Subject:** RE: Information from Houston's OCC

   Included with OCC's October 28, 2020, which failed to address any concerns, response were two enclosures dated October 26, 2015, from the Customer Assistance Group (CAG) located in Houston, Texas and a November 3, 2016, Appeal/Arbitration Notification, allegedly from the Office of the Ombudsman *curiously using the CAG's Houston, Texas mailing address, CAG' letterhead, and envelopes; even though, the Ombudsman Office is located in Washington, DC.* Unacceptably, neither the alleged complaint response, October 26, 2015, letter, nor the alleged Appeal/Arbitration November 3, 2016, letter (See Exhibits 15A-D) addressed any issues raised in this COMPLAINT such as theft ORC 2913.02(A)(3) of monies and conspiracies.

   c. December 22, 2020

| OCC Customer Assistance Group 1301 McKinney Street | OCC Headquarters Senior Deputy Comptroller Maryann H. Kennedy | Hon. Senator Rob Portman 37 West Broad Street Rm 300 |
|---|---|---|

| Suite 3450<br>Houston, Texas 77010-9050 | 400 7th St. SW<br>Complaint<br>Washington, DC 20219 | Federal Agency Complaint<br>Columbus, Ohio 43215 |
|---|---|---|

Dear Acting Director and Hon. Senator Rob Portman, Request to Sen. Portman for

assistance, Exhibit 16.

It has been well over a month since we sent our November 2, 2020, response to Houston's OCC with at least **20 pieces of supporting documents**. Due to the fact, the Houston OCC alleges, they had performed an ethical and comprehensive determination of our complaint. **If true, why is it taking them so long to respond with information consistent with our November 2, 2020, submittal?** Oath of Directors 12 CFR § 7.2008

There must be an investigation of the Houston Office or is this standard operation – being disingenuous, duplicitous and obstructing a well-documented complaint? The subject employees at the Houston office must be removed, since they have repeatedly alleged, they had performed a thorough investigation – if so, they should be able to address our November 2, 2020, submittal? We are tired of wasting our monies and time on such ineffectiveness.

 d. **From:** <u>Houston Byrd</u>
    **Sent:** Monday, January 18, 2021 12:05 AM
    **To:** <u>Fraud Prevention and Investigation</u>; <u>executive.office@chase.com</u>
    **Subject:** Last Request

Our communication was returned on April 22, 2020, by the U.S. Postal stating, "Return to Sender No such Address Unable to Forward". Once again, Chase's Upper Management must be notified, we have wasted exorbitant resources and time while dealing with dishonest and troubling representatives of the Company. The fraud and theft must cease! CT Corporation failed to respond! **(Emphasis)** Who is CT Corporation what is their function?

We submitted the same exhibits to a CT Corporation System; the following have been contacted: <u>executive.office@chase.com</u>; <u>Fraud.Prevention.and.Investigation@jpmchase.com</u>

 1. CT Corporation System, 1300 East 9th Street, Cleveland, Ohio 44114

 2. Then on May 4, 2020, Chase told us to send to CT Corporation System, 4400 Easton Common Ways, Suite 125, Columbus Ohio 43219, [they gave us a wrong address].

 3. What was the purpose for us trying to contact CT Corporation?

 4. Who is CT Corporation and what are their functions? [5]

---

[5] Exhibits 17A and 17B

## VI.  Issues That Chase Should Be Able to addressed Individually and Collectively

Plaintiff alleges, Chase has egregiously and feloniously failed to comply with numerous Federal and State statutes, such as 18 U.S. Code § 1349; 18 U.S. Code § 656; ORC 2913.02(A)(3); ORC 2923; the Truth in Lending disclosure, Fair Credit Reporting Act, 15 U.S.C. § 1681, Sec. 611; Criminal bank pyramiding late fees 12 CFR § 227.15 Unfair late charges; 18 U.S.C.A. s 1341, United States Code Title 18. Crimes and Criminal Procedure Part I-Crimes, Chapter 63-Mail Fraud, Section 1341. Frauds and swindles…by fraudulently inserting late fee dates, pyramiding late fees, and failing to correctly amortize Chase's Deal No. 284036 and contract No. 10601614530908.  Chase's flawed and perjurious actions gravely affected one's Fair Isaac Corporation (FICO) {Exhibits 18A-D, a few of many credit declines} score which was 820 and the ability to easily get credit.

42 U.S.C. § 1985 - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 1985. Conspiracy to interfere with civil rights (2) OBSTRUCTING JUSTICE; INTIMIDATING PARTY, … Continuing Offenses for conspiracy, the period begins to run when the last overt act is committed. Fiswick v. US, 329 U.S. 211 (1946); or 18 USC 656, or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, **the right of any person,** or class of persons, to the equal protection of the laws;

**A germane question is, "Who allegedly Permits Over Five Years of alleged late payments to accrue and then harassingly 'takes' the car after a full payment.**  Taking one's mode of transportation under the guise of a legal repossession?"  Second, Chase has failed to provide the plaintiff with deposed documents, they didn't illegally send any disputed Adverse information to the CRAs!

A.  Mail fraud (using the mails for a scheme or artifice to defraud). 18 USC 1341.

B.  Theft, embezzlement, or misapplication by bank officer or employee. 18 USC 656.

C.  Falsifying bank records (reports, entries or transactions). 18 USC 1005.

D. Making a false statement or report, or overvaluing assets as it relates to insurance and a financial institution. 18 USC 1033.

## VII.    Response Chase provided to the CFPB, who sent to plaintiff

**Chase alleges,** – "Initially we informed the credit reporting bureaus that your account was paid in full and charged off.  **But, we later requested the trade line deleted.**  We confirmed we are not providing your account information to the credit reporting bureaus Equifax, Experian, and TransUnion." – the damage to my credit had been done.  **Plaintiff -** You all have supporting documents to support the damages to my credit and can JP Morgan Chase provide us with copies of the alleged TRADE LINE notice, i.e., when WAS the DELETED information sent?  See Exhibits 18A-D. [6]

Chase assured plaintiff; they had corrected the Credit Reporting issue.  As late as January 11, 2017, there was still contested information being provided to the Credit Reporting Agencies, see Exhibit 18D and Exhibit 13 dated February 24, 2020; see § 617. Civil liability for negligent noncompliance [15 U.S.C. § 1681o]; § 616. Civil liability for willful noncompliance [15 U.S.C. § 1681n]; which sets in motion ORC 2913.02(A)(3); Fiswick v. US, 329 U.S. 211 (1946); United States v. Gonzalez, 797 F.2d 915 (10th Cir. 1986) and 18 U.S.C.A. s 1341, United States Code Title 18. Crimes and Criminal Procedure Part I-Crimes, Chapter 63-Mail Fraud, Section 1341. Frauds and swindles stipulations.

**Plaintiffs response,** please mail to us, since throughout the process, this is the first time, we heard of such and if the CFPB reviewed any prior information from JP Morgan Chase, they will be hard pressed to find an alleged TRADE LINE DELETION!  Plus, no mention of the illegal

---

[6] **Continuing Offenses f**or conspiracy, the period begins to run when the last overt act is committed. *Fiswick v. US,* 329 U.S. 211 (1946)

entry dates and excessive unsubstantiated late fees. Exhibit 7, bullet one alleges, the 5/1 dates were origination fees. However, Exhibit 8 indicates a second origination fee, under the finance charges, e.g. Total Payments. Chase is double charging! Exhibit 6, Chase clearly states, they are pyramiding. Chase alleges, they have never charged us over $22.33. They statements are blatantly perjurious; so, the continued concerns with facts! See Exhibits 2A-C.

Conclusion

As discussed, the knowingly and willfully committing of fraud and theft have compromised the plaintiff's FICO score and other issues with credit by violating numerous Federal and State laws. Information contained in consumer reports can be critical to a host of decisions vital to Americans' daily lives. Consumer reports are used to evaluate consumers' eligibility for loans, internet service, rental housing, insurance, and checking accounts, as well as to determine the interest rates and insurance premiums they are assessed. Prospective employers commonly use consumer reports in their hiring decisions.

In the interest of justice, a court must view the evidence presented "through the prism of the substantive evidentiary burden, a court must review relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the decision rendered" and it is the duty of the judge to make assessments of all relevant evidence and then carry out the discretionary balance.

**VIII.    Relief Sought**

Chase has been falsifying documents and disingenuously stonewalling accountability, so no one has a clear understanding of the depth of the fraud and conspiracies. Reparations are warranted, payable forthwith and in accordance with laws; due to the continuing offenses of misrepresentation of material facts and blatant theft of monies pursuant to ORC 2923; ORC

2913.02 Theft (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) By deception; the truth in Lending Disclosure; 18 U.S.C.A. s 1341, United States Code Title 18. Crimes and Criminal Procedure Part I-Crimes, Chapter 63-Mail Fraud, Section 1341. Frauds and swindles ...; 42 U.S.C. § 1985 - U.S. Code - Unannotated Title 42. The Public Health and Welfare § 1985(3) "the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators" and punitive damages and other federal and State Laws for $438, 742.17 compensatory damages, plus the applicable federal/state/local taxes, punitive damages to be calculated by a Certified Public Accountant if not forthcoming and the following:

Sec. 616. Civil liability for willful noncompliance. (a)(1) (A) any actual damages…by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

Some guideposts, or indicia, of excessiveness to evaluate whether the punitive damages award violated due process. The three indicia are (1) the degree of reprehensibility of the defendant's conduct, (2) the disparity between the harm or potential harm to the plaintiff and the amount of the punitive damages, and (3) the difference between, the amount of punitive damages awarded and the civil or criminal sanctions available to be imposed for similar misconduct. See 517 U.S. at 574-575, 116 S. Ct. at 1598-1599, 134 L.Ed.2d at 826; "[c]ourt held in Schellhouse v. Norfolk & W. Ry. Co. (1991), 61 Ohio St.3d 520, 524-525, 575 N.E.2d 453, 456, that "[a]cts committed with actual malice constitute behavior qualitatively different from that which may be characterized as merely negligent" and, therefore, contributory negligence is not available as a defense where conduct in conscious disregard has been established."

### IX. Reservation of Rights

The plaintiff hereby reserves the right to amend, modify or supplement this complaint in order to seek additional relief and/or petition for deposed affidavits that Chase alleges, they sent to OCC and the CFPB, pursuant to Civ. R. 34. Since, neither Chase, the CFPB nor OCC has been forthcoming with supporting documents. Therefore, we find the responses dubious, refer to **Exhibit 13, dated February 24, 2020. (Emphasis), the non - responses from Chase, CFPB and OCC precipitated this complaint and Chase stating 'this will be our finally response'!** [7]

Ohio follows the "no set of facts" pleading standard, recognizing that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." O'Brien v. Univ. Community Tenants Union, Inc., 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975), quoting Ashcroft v. Iqbal, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).

Certificate of Services

Complaint and Exhibits sent via USPS to the Court; the Court will issue all pursuant to Civil Rules 3 and 4 of the Rules Governing the Courts of Ohio to JP Morgan Chase (Chase), 3415 Vision Drive, Columbus, Ohio 43219

Respectfully submitted on April 5, 2021

_____

/s/ Houston Byrd, Jr. Pro se

18 Exhibits, plus the following three (3). Total of 36 pages

---

[i]

a. Exhibit a, Chase's March 24, 2017, letter alleging, they responded to the same concerns on March 16, 2017.

b. Exhibit b, Chase's March 21, 2017, alleging, we are in the process of investigating your concerns.

c. Exhibit c, Chase's March 16, 2017, letter alleging, we already responded to the majority of your concerns.

---

[7] **Continuing Offenses for** conspiracy, the period begins to run when the last overt act is committed. *Fiswick v. US,* 329 U.S. 211 (1946)